Robert B. LIESEGANG, Sr., Roberto
Sotelo, and Paul L. Fletcher,
Petitioners,

v.

SECRETARY OF VETERANS
AFFAIRS, Respondent.

No. 01–7109.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 15, 2003.

Before CLEVENGER, RADER and
LINN, Circuit Judges.

*ORDER*

The Secretary of Veteran Affairs (the
"Secretary") petitions for panel rehearing
of this court's decision in *Liesegang v.
Sec'y of Veterans Affairs,* 312 F.3d 1368
(Fed.Cir.2002). Robert B. Liesegang, Sr.,
Roberto Sotelo, and Paul L. Fletcher (col-
lectively, the "Veterans") respond.

*Liesegang* involved a challenge to the
effective date of a regulation issued by the
Department of Veterans Affairs (the
"agency") establishing a presumption of
service connection for Vietnam veterans
who developed Type–2 diabetes. *Id.* at
1370. Based on Congress's unambiguous
intent, we determined that the agency
erred in adopting a July 9, 2001, effective
date. *Id.* at 1372–76. Under the control-
ling statute, the effective date for this reg-
ulation is the date of the rule's issuance,
which is May 8, 2001. *Id.* at 1376 (citing
38 U.S.C. § 116(c)(2) (2000)). The Secre-
tary acquiesces in our holding regarding
the effective date of the regulation.

The Secretary's petition for rehearing
questions the relief that we granted. The
Veterans initially requested that we vacate
all adjudications made pursuant to the
challenged regulation. *Id.* at 1378. For
prudential reasons, we declined to grant
the Veterans' requested relief and, instead,
adopted the narrower remedy suggested
by the Secretary to use "publication of
additional regulations and guidelines, and
appropriate outreach to convey the neces-

718

sary information to the veteran community." *Id.* Because "[t]he agency does not specify the content of any such regulations and guidelines, ... we refrain[ed] from telling the agency what such regulations or guidelines should say." *Id.* On the subject of the suggested information outreach, we ordered that

> veterans with pending or finally adjudicated claims under the diabetes regulation be notified in writing, in clear and unambiguous terms, that the true effective date of the regulation is May 8, 2001. In addition, each such veteran must be further informed of the consequences to him or her, in terms of the effect on his or her claim for compensation, of the correct effective date. If such information is not conveyed in writing to each such veteran, there can be no assurance that veterans will be able to enjoy their entitlement to the correct effective date.

*Id.* at 1378–79.

The Secretary now questions the injunctive relief we ordered to accommodate his suggestion that information outreach was appropriate under these circumstances. He argues that the ordered relief is overly broad, needs to be limited, and must be clarified. Specifically, the Secretary seeks our imprimatur for the following remedial actions he plans to take in this case. First, the agency will provide a nonindividualized, general notice of our ruling in *Liesegang* to all veterans who received benefits under the diabetes regulation and whose claim was received between May 8, 2001, and July 9, 2002. This notice will inform the Veterans that the effective date of the diabetes regulation is May 8, 2001, rather than July 9, 2001, and will notify them in general terms of the effect this change will have on their benefit awards. The Secretary states that the agency is capable of sending this notice within 45

days of the date of an order issued in response to the Secretary's Petition for Panel Rehearing. Second, the agency will automatically revise the effective dates of all awards made under the diabetes regulation to reflect the correct effective date of May 8, 2001, without requiring that the affected veterans submit a request for corrective action. The Secretary, however, asserts that the automatic revision of effective dates involves "tens of thousands" of claims, and that it "will take longer than 45 days" to complete the automatic revision process. Once the automatic change is completed, the agency will send individualized notices to each affected veteran, along with an explanation of the actions taken, the reasons for such changes, the means for obtaining additional information, and the avenues for challenging the agency's actions. Finally, the agency will issue payments to each veteran who is entitled to retroactive benefits as a result of the agency's automatic effective date correction. The Secretary thus requests that we modify our ruling to authorize those proposed remedial actions.

The Veterans agree with the Secretary's proposed modifications, except in two major respects. First, the Veterans argue that the agency should send notices to claimants with pending claims under the diabetes regulation by a date certain, to empower claimants to obtain a correction in case the adjudicator set the wrong effective date and to facilitate the preparation and presentation of their pending claims. Second, the Veterans expressed concerns that, without a date certain in the near future for completing the automatic corrections to the diabetes claims' effective date and the sending of personalized notices, agency delays may result in a permanent loss of benefits for eligible claimants who die before the agency takes corrective actions in their individual cases.

As to the first ground raised by the Veterans, we decline to interfere with pending claims that have not yet been fully adjudicated. As we have explained, "[w]ith regard to claims by veterans under the diabetes regulation that have not reached final adjudication, we have no reason to doubt that the agency will apply the correct effective date of May 8, 2001." *Liesegang*, 312 F.3d at 1378.

We agree with the Veterans' second reason for disputing the agency's proposed actions. By law, a veteran's entitlement to disability payments ends on the last day of the month before the veteran's death. *See* 38 U.S.C. § 5112(b)(1) (2000). That is, if a veteran dies before establishing his or her right to veteran benefits, the claim dies with the veteran. *See Richard v. West*, 161 F.3d 719 (Fed.Cir.1998); *Landicho v. Brown*, 7 Vet.App. 42 (1994). The statute, however, allows certain survivors to seek payment of accrued benefits owed to a veteran at the time of the veteran's death. *See* 38 U.S.C. § 5121 (2000); *Seymour v. Principi*, 245 F.3d 1377, 1379 (Fed.Cir. 2001). This accrued-benefits provision has a limited scope, since it applies only to benefits "due and unpaid" at the time of the veteran's death, and benefits are limited to "a period not to exceed two years" prior to the veteran's death. *Seymour*, 245 F.3d at 1379. Accordingly, if a veteran legally entitled to retroactive benefits under the true effective date dies before the agency corrects his file, the deceased veteran and his family would lose the benefits given to them by law, unless the veteran's survivors successfully claim "due and unpaid" benefits as allowed by law. As the Veterans correctly point out, the two-year period for "accrued benefits" in this case will expire on July 9, 2003. Any veteran entitled to the two months of retroactive payment who dies after July 9, 2003, would forever forfeit the benefits due to him under the law. Without a limit on the amount of time the Secretary may take to correct records and give personalized notices, there is a genuine risk of impairment of otherwise vested veteran entitlements.

We are reluctant to impose extreme burdens on the Secretary, but we are equally reluctant to expose our Nation's veterans to potential loss of benefits arising from slow, but well-meaning, agency action.

We take note of the Secretary's willingness and ability to send generalized notices to the tens of thousands of affected veterans within 45 days of the order we issue today. This necessarily means that the agency is capable of identifying by name each affected veteran, and taking a veteran-specific act in sending even the generalized notice. Notwithstanding this agency capacity, the Secretary argues that automatic correction of individual records and sending of personalized notices cannot be accomplished in 45 days. Consequently, the Secretary asks that we impose no time limit on correction of records and sending of personalized notices and instead permit the process to proceed "as expeditiously as possible." Were it possible for the Secretary to guarantee that no veteran or veteran dependent could possibly suffer loss of benefits as a result of slow, but well-meaning delay, we could accept the Secretary's wish that no time limit be imposed for correction of records and sending of personalized notices. We have not had that promise from the Secretary.

The Veterans, to their credit, recognize that a 45–day time limit on the obligation of the Secretary to correct records and send personalized notices constrains the agency. The Veterans suggest that we impose a 60–day time limit on the Secretary's performance of these duties. A reasonable accommodation of the interests of the parties is required. Until such a time

as the Secretary can guarantee no loss of benefits to any affected veteran, we must impose some time deadline for performance of the duties the Secretary has volunteered to undertake.

Accordingly, the Secretary's petition for panel rehearing is hereby granted for the sole and limited purpose of amending the injunctive relief provided in our original December 10, 2002, decision, and

IT IS ORDERED THAT

(1) Within 45 days of the date of this Order, the agency shall provide notice of this court's December 10, 2002, decision to all veterans who (a) have been awarded benefits pursuant to the agency's diabetes regulation and (b) whose initial claim for benefits was received by the agency between May 8, 2001, and July 9, 2002. This notice will inform the veterans that the effective date of the diabetes regulation is May 8, 2001, rather than July 9, 2001, and will notify them, in general terms, of the effect this change will have upon their benefit award.

(2) Within 90 days of the date of this Order, the agency shall revise the effective dates of all awards it made pursuant to the diabetes regulation that would be affected by the December 10, 2002, decision of this court, to reflect the regulation's proper effective date of May 8, 2001. The agency shall not require veterans to submit a request for this corrective action. The notice referenced in the preceding paragraph (1) will inform veterans that the agency will revise the effective dates of their awards without requiring them to request the agency to take this corrective action.

(3) Within 90 days of the date of this Order, the agency shall send individualized notice to each affected veteran, explaining the actions it has taken and the reasons for that action. This individualized notice will also notify the veterans of the procedures for obtaining further information re-

garding their claims, and for challenging action taken by the agency on their claims.

(4) The agency will issue prompt payment to each veteran who is entitled to retroactive benefits as a result of the agency's correction of the effective date of his or her claim.

RADER, Circuit Judge, dissents.

The mandate of the court will issue on May 22, 2003.